# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK HAIRSTON, | CIVIL ACTION NO: 2:21-cv-02088 |
| PLAINTIFF, | |
| v. | SECTION: G     DIVISION: 3 |
| SUN BELT CONFERENCE INC., | JUDGE: NANNETTE JOLIVETTE BROWN |
| DEFENDANT. | MAGISTRATE JUDGE: DANA DOUGLAS |

## OPPOSITION TO MOTION FOR EXTENSION OF DISCOVERY

Defendant, Sun Belt Conference Inc. ("Sun Belt"), files this *Opposition* to the Motion for Extension of Discovery, R. Doc. 51 (the "*Motion*") filed by Plaintiff, Patrick Hairston ("Plaintiff"). Sun Belt opposes extending the discovery period for the following reasons:

### I. SUMMARY OF THE ARGUMENT

Plaintiff asks this Court to extend the discovery period so that he can propound additional, unknown written discovery and take seven additional depositions. Plaintiff's Motion falls woefully short of establishing good cause because Plaintiff fails to explain the significance of the discovery sought and/or why, despite his diligence, the discovery could not have been conducted during the ten-month discovery period. More importantly, a discovery continuance would severely prejudice Sun Belt in that it would force Sun Belt to conduct discovery after filing its motion for summary judgment and in the weeks leading up to trial, rather than preparing for trial.

First, with the exception of one,[1] all of the individuals Plaintiff seeks to depose were identified *by Plaintiff* in his initial disclosures submitted on December 22, 2021—nine months before the foregoing Motion.[2] Of the seven requested deponents, only three—Sun Belt's Commissioner, Keith Gill ("Gill"); Sun Belt's Deputy Commissioner, Kathy Keene ("Keene"); and Sun Belt's Executive Associate Commissioner and Chief Financial Officer, Herbert Carter ("Carter")—are still employed and under the custody and control of the Sun Belt.[3] Plaintiff's counsel requested deposition dates for these three witnesses *for the first time* on September 20, 2022—nine days before the close of discovery. Plaintiff fails to explain why he waited nine months to request these depositions, including the deposition of the individual who terminated him. Nevertheless, Sun Belt immediately scheduled the depositions of Gill, Carter and Keene for September 26 – 28. Thus, they will be taken before the close of discovery. As a result, the Motion is moot with respect to these depositions.

The remaining witnesses are former employees[4] of Sun Belt who Plaintiff believes will testify regarding the "the work environment at Sun Belt." Plaintiff has *never* requested deposition

---

[1] Alex Price was named by Plaintiff for the first time in his Witness List. R. Doc. 49. Nevertheless, Plaintiff and his counsel were aware of Price and her alleged testimony on April 26, ***2021***—well before propounding his initial disclosures—when Plaintiff's witness, Karl Benson told Plaintiff's counsel, Mark Montiel, about Price and her alleged testimony. Ex. 7, p. 3. ("Former SBC staffer Alexandria Price/who will testify she experienced institutional racism while employed at the SB by Kathy Keene");

[2] *See* Ex. 1, Plaintiff's Initial Disclosures, p. 3-5. Two of these witnesses—Gill and Keene—were identified in Plaintiff's October 2020 EEOC Charge and his October 2021 Complaint. *See* R. Doc. 1-1.

[3] Sun Belt can only produce its employees for depositions; non-party former employees are outside the custody and control of Sun Belt and must be subpoenaed. *Gabriel v. Safeway, Inc.*, 2011 U.S. Dist. LEXIS 133831, at *13-14 (D.N.J. Nov. 7, 2011); *see also*, Fed. R. Civ. Proc. 45(d)(3)(A)(ii); *Jackson v. Stevens Transp., Inc.*, 2015 U.S. Dist. LEXIS 5318, at *4-5 (N.D. Tex. Jan. 15, 2015).

[4] All of the individuals left Sun Belt before the Complaint was filed. As such, Sun Belt has not had the ability to produce these individuals for a deposition during the entire discovery period.

dates for these individuals or propounded Rule 45 subpoenas to have them appear. In fact, Plaintiff's Motion—filed eight days before the close of the period—was the first time these depositions were mentioned. But Plaintiff does not need to take depositions to obtain these witnesses' testimony in admissible form. He is free to contact these third-party witnesses, collect their statements, and call them at trial. Plaintiff's failure to take any of these steps during the ten-month discovery period, however, exposes the insignificance of their testimony. Because Plaintiff has failed to explain the importance of the testimony and why, despite diligent efforts over the last ten months, he was unable to obtain statements or schedule depositions with these non-party witnesses, he has failed to show good cause to extend the discovery deadline.

Second, Plaintiff never identified the written discovery he needs to conduct or explained its significance. As a result, he has failed to carry his burden of showing good cause.

## II. PROCEDURAL BACKGROUND

On October 16, 2020, Plaintiff filed his Charge of Discrimination with the EEOC and alleged Gill and Keene engaged in race discrimination in terminating his employment.[5] On October 8, 2021, Plaintiff filed suit for race discrimination, breach of contract, and failure to pay vacation time.[6] In his Petition, Plaintiff claimed that during the tenure of *former* Sun Belt Commissioner, Karl Benson ("Benson"), Keene: (1) did not support Plaintiff's hiring, (2) opposed the hiring of other minorities; and (3) recommended hiring white employees over minority candidates.[7] Plaintiff claimed that as soon as Benson retired, Keene terminated minority employees

---

[5] R. Doc. 1-1, p. 8-9.

[6] R. Doc. 1-1. Plaintiff also asserted a claim for violation of Louisiana's Unfair Trade Practices Act, but that claim was dismissed by the Court. *See* R.Doc. 47.

[7] R. Doc. 1-1, p. 2.

and "favored white employees she had previously recommended for hire."[8] Plaintiff claimed he was terminated by Keene and that Gill, Benson's replacement, did not have a significant say in Plaintiff's termination, but rather that Gill was used "as a shield" because he was the "lone remaining minority employee at the Sun Belt."[9]

On November 11, 2021, Sun Belt removed the action to this Court.[10] The Court issued the scheduling order on December 15, 2021, and established the following deadlines:

- Discovery: September 29, 2022;
- Dispositive Motions: October 4, 2022;[11]
- Final Pretrial Conference: November 10, 2022; and
- Trial: November 28, 2022.[12]

The Court stated clearly that the "[d]eadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon timely motion filed in compliance with Local Rules and upon a showing of good cause. Continuances will not normally be granted. The Court requires strict adherence to scheduling orders and deadlines."[13]

---

[8] *Id.*

[9] *Id.*, p. 2, 4.

[10] R. Doc. 1.

[11] The Scheduling Order provides that "[a]ll non-evidentiary pretrial motions shall be filed and served in sufficient time to permit hearing thereon no later than October 19, 2022." R. Doc. 17, p. 1. This Court's next submission date is October 19, 2022. Under Local Rule 7.2, Sun Belt's dispositive motion must be filed by October 4, 2022—not later than the fifteenth day preceding the submission date.

[12] *See gen.*, R. Doc. 17.

[13] *Id.*, p. 5.

On December 16, 2022, Sun Belt answered Plaintiff's Complaint and denied the allegations that Keene, Gill, and Sun Belt engaged in race discrimination and averred that Plaintiff was fired for legitimate, nondiscriminatory reasons.[14]

On December 22, 2021, the parties exchanged initial disclosures.[15] Sun Belt identified Plaintiff, Gill, Keene, and Carter as witnesses with relevant information regarding Plaintiff's termination and Sun Belt's defenses.[16] In Plaintiff's December 22nd initial disclosures, he identified all but one of the seven requested deponents at issue in this motion.[17] Specifically, Plaintiff identified Gill, Keene and Carter as witnesses with information regarding his termination.[18] Additionally, Plaintiff identified former employees Toni Derby ("Derby"), Keith Nunez ("Nunez"), and Kyle Wilborn ("Wilborn") as witnesses with relevant knowledge regarding "the work environment at Sun Belt" and Plaintiff's claim for race discrimination.[19]

On March 17, 2022, Plaintiff responded to Sun Belt's written discovery.[20] While Plaintiff's discovery responses were deficient, Plaintiff identified all but one of the requested deponents as having knowledge to support his claims—Gill, Keene, Carter, Derby, Wilborn, and Nunez.[21] After receiving these responses, Sun Belt sent Plaintiff two deficiency letters and demanded, amongst other things that Plaintiff verify his responses, provide a privilege log, provide information

---

[14]  R. Doc. 22.

[15]  Ex. 1; Ex. 2, Sun Belt's Initial Disclosures.

[16]  Ex. 2, p. 2-3.

[17]  Ex. 1, p. 3-5.

[18]  *Id*.

[19]  *Id*.

[20]  Ex. 3, Plaintiff's Interrogatory Responses; Ex. 4, Plaintiff's Responses to Requests for Production.

[21]  Ex. 3, Interrogatory No. 4, p. 3-4.

regarding his damages and his efforts to mitigate his damages, provide his subsequent income and tax records, and provide his communications with third parties about the lawsuit.[22] For example, there were obvious examples of Plaintiff communicating with third-party Benson,[23] but Plaintiff produced none of these communications and actually *verified* under oath that no such communications existed.[24] Based on Plaintiff's failure to timely cure these deficiencies after several meet and confers, Sun Belt decided to postpone Plaintiff's deposition until the issues were resolved through counsel or, if necessary, with the Court's assistance.[25] Plaintiff's deposition was originally scheduled for July 28, 2022, and actually took place on September 9, 2022.

On July 20, 2022, Sun Belt responded to Plaintiff's written discovery.[26] Sun Belt responded that the individuals identified in its initial disclosures—Gill, Keene, and Carter—are the witnesses it will call at trial and further stated that Keene and Gill were involved in evaluating Plaintiff's performance.[27] On September 9, 2022, the parties submitted their Witness Lists to the Court.[28] Sun Belt again identified Gill, Carter, and Keene as witnesses who will testify at trial regarding Plaintiff's termination.[29] Plaintiff identified the same individuals from his initial disclosures and discovery responses who are the subject of this motion—Gill, Keene, Carter, Derby, Nunez, and

---

[22] Ex. 5, First Deficiency Letter; Ex. 6, Second Deficiency Letter.

[23] Ex. 7, Excerpts of Communications between Benson and Hairston. These text messages were received via response to a subpoena to Benson. Notably, even though Plaintiff *verified* that no communications between him and Benson existed, Benson produced those communications.

[24] Ex. 8, Supplemental Responses, RFP 16; Ex. 9, Verification; Ex. 10, Email Chain Between Counsel, p. 1.

[25] Ex. 10, p. 3.

[26] Ex. 11, Sun Belt's Interrogatory Response; Ex. 12, Sun Belt's Responses to Requests for Production.

[27] Ex. 11, Interrogatory Nos. 3, 11, and 12.

[28] R. Docs. 49 and 50.

[29] R. Doc. 50.

Wilborn—as witnesses who will testify at trial to support his claims.[30] R. Doc. 49. In addition to these well-known witnesses, Plaintiff identified Alexandra Price ("Price") for the first time as a former employee who will testify about Sun Belt's environment.[31]

Price left Sun Belt in April 2015, a year before Plaintiff started working for the conference.[32] As a result, Sun Belt did not believe her testimony would be relevant and did not seek to depose her. Nevertheless, Sun Belt has since learned that Plaintiff's counsel was aware of Price and her alleged testimony *since April 26, 2021*—before he filed suit.[33] Apparently, Benson and former employee, John McElwain (a white male who was terminated by Gill) were preparing a list of former Black employees they believed would testify that Keene engaged in systemic racism while Benson was Commissioner.[34] Of note, the two witnesses working with Plaintiff's counsel, both of whom are former white employees of Sun Belt, made sure to exclude Black employees who liked and worked well with Keene.[35]

On September 20, 2022—*nine* days before the close of discovery—Plaintiff requested deposition dates for Gill, Keene, and Carter *for the first time*.[36] Plaintiff also asked Sun Belt to agree to extend the discovery period and propounded a second set of untimely discovery requests.[37] Sun Belt objected to extending the discovery period beyond the dispositive motion deadline, but

---

30  R. Doc. 49.

31  *Id*.

32  Ex. 13, Price LinkedIn

33  Ex. 7, p. 3. ("Former SBC staffer Alexandria Price/who will testify she experienced institutional racism while employed at the SB by Kathy Keene"); Ex. 14, Compilation of Benson Texts, p. 5.

34  *See gen*, Ex. 14.

35  *Id*., p. 3-4.

36  Ex. 15, Email between Counsel, p. 3.

37  Ex. 16, Email between Counsel; Ex. 17, Email between Counsel.

agreed to schedule Keene, Gill, and Carter's depositions on short notice.[38] Sun Belt simply requested that Plaintiff ensure the court reporter agreed to expedite the transcripts so Sun Belt could use the transcripts to timely file its motion for summary judgment by October 4, 2022.[39] These depositions have been scheduled and are going forward on September 26th, 27th, and 28th. Plaintiff's counsel has *never* requested, mentioned, or sought to arrange the depositions of Price, Nunez, Price, Derby, and Wilborn.

On September 21, 2022, Plaintiff moved to extend the discovery deadline arguing there is good cause to extend the deadline to depose Carter, Gill, Keene, Nunez, Price, Derby, and Wilborn and conduct unidentified written discovery.

## III.  LAW AND ARGUMENT

### A.  *Standard*

This Court clearly explained the standard for extending discovery in *Collins v. Benton*, 2019 U.S. Dist. LEXIS 214236, at *5-6 (E.D. La. Dec. 11, 2019) (Brown, C.J.) (internal citations and quotes omitted), stating:

> Federal district courts have the inherent power to enforce their scheduling orders. Federal Rule of Civil Procedure 16(b) provides that a scheduling order may be modified only for good cause and with the judge's consent. The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. Courts employ a four-prong analysis to determine whether good cause exists for an extension: (1) the explanation for the failure to meet the discovery deadline; (2) the importance of the discovery; (3) potential prejudice in allowing the discovery; and (4) the availability of a continuance to cure such prejudice. In deciding whether to grant a continuance, the Court's judgment range is exceedingly wide, for it must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's  Simply put, whether to grant or deny a continuance is within the sound discretion of the trial court.

---

[38] Ex. 15, p. 1-3.

[39] *Id.*, p. 1-2.

**B.    *Plaintiff cannot establish good cause because he has not been diligent in seeking the discovery and cannot explain his failure in meeting the deadline.***

Plaintiff has not even attempted to show he was diligent in seeking this discovery. Nor can he. All of these witnesses have been known by Plaintiff since before he propounded initial disclosures on December 22, 2021.[40] Plaintiff has offered no reason why he failed to request to depose these witnesses during the ten-month discovery period. Plaintiff waited, without explanation, until nine days before the close of discovery, to request the depositions of Gill, Keene, and Carter and has never once requested the other depositions or identified the additional discovery needed.

In appears Plaintiff is trying to distort facts to place the blame for his delay by arguing Sun Belt used unproduced documents in three depositions and contending that this "tactic" "prompted the need" for this discovery. Notably missing from this unfounded argument is any explanation of: (1) what the documents were; (2) whether the documents were improperly withheld or even responsive to Plaintiff's discovery requests; and (3) why these documents changed everything and prompted the need for Plaintiff's counsel to finally decide to depose Sun Belt's decision makers and non-party witnesses at the final hour. Plaintiff's silence on these critical issues exposes the disingenuous nature of his argument.

Indeed, Plaintiff cannot explain his delay in seeking to depose the alleged decision maker for his termination in a race discrimination case. Plaintiff named Keene as the decision maker in the Complaint and EEOC Charge and noted in the Complaint that Gill, her supervisor, was just a shield for Keene's discriminatory animus. He obviously knew their testimony on the termination was critical and listed them as relevant witnesses from the outset. Nevertheless, Plaintiff's

---

[40]    Ex. 1; Ex. 7.

discovery neglect has forced him to fabricate an excuse and place unfounded blame on Sun Belt. To be clear, Sun Belt has never improperly withheld a document in this case. The documents at issue were not responsive to any discovery request and Plaintiff has provided the Court with no evidence otherwise.

Put simply, Plaintiff has the burden of showing he has been diligent in seeking this discovery and he could not meet the deadline despite his diligence. Here, the facts show a clear lack of diligence as Plaintiff could have requested these depositions at any time over the last ten months. As such, Plaintiff has failed to carry his burden to extend the discovery period. *See Benton*, 2019 U.S. Dist. LEXIS 214236, at *5-6.

### C. *The remaining factors of the Fifth Circuit's four-factor test weigh in favor of denying the Motion as Plaintiff fails to explain the significance of the discovery and Sun Belt would be severely prejudiced.*

First, Plaintiff has not even attempted to explain the importance or significance of this discovery. Indeed, the only import Plaintiff places on any of the seven depositions is the fact that some requested deponents are "high ranking members of the Sun Belt." The Parties have agreed to take the depositions of Gill, Keene and Carter during the discovery period. Plaintiff cannot establish the remaining depositions sought are so important the discovery deadline should be extended.

Second, a discovery continuance would severely prejudice Sun Belt in that it would force Sun Belt to conduct discovery after filing its motion for summary judgment and "would require [it] to continue with discovery in the weeks leading up to trial, rather than preparing for trial." *See Benton*, 2019 U.S. Dist. LEXIS 214236, at *5-6. Plaintiff's arguments that this his first request for an extension and Sun Belt rescheduled his deposition are irrelevant. The Court made clear in the scheduling order extensions will not be granted absence a clear showing of good cause. Furthermore, Sun Belt was forced to delay Plaintiff's deposition because Plaintiff was clearly

withholding relevant communications with Benson, and other pertinent discovery responses. Sun Belt conferred with Plaintiff's counsel numerous times and wrote multiple letters in effort to get those communications which Plaintiff ultimately verified (incorrectly) did not exist. Sun Belt's efforts to get Plaintiff to produce highly relevant documents are separate and apart from whether Plaintiff's request to extend the discovery period to take seven depositions of individuals known from the outset of this litigation.

Finally, under the fourth factor, a continuance of the dispositive motion deadline and trial will not cure the prejudice to Sun Belt. As this Court recognized, "it must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's. *See Benton*, 2019 U.S. Dist. LEXIS 214236, at *5-6. This case has been pending for a year. Sun Belt has devoted significant time and effort to respond to two motions to remand, conduct discovery, and draft a motion for summary judgment, which is due in eight days. To continue the summary judgment deadline at this stage would be inefficient and would needlessly force Sun Belt to spend time and money redrafting the motion after it is forced to conduct discovery that should have been conducted during the ten-month period. Furthermore, continuing trial further delays Sun Belt from clearing its name and compounds the prejudice. Indeed, Plaintiff made extremely specific factual allegations about what these witnesses would testify about over a year ago. Now is the time to present that evidence to the Court, if it exists, in order to proceed to trial.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion for Extension of Discovery. Plaintiff has known of the individuals he seeks to depose since the outset of this litigation and has failed to explain why, despite his diligent efforts, he has been unable to conduct these depositions. Plaintiff's apparent lack of diligence along with his failure to explain the

significance of the discovery dictates that the Court should deny the Motion to avoid prejudicing Sun Belt.

Respectfully submitted,

*/s/ Jennifer F. Kogos*
Jennifer F. Kogos (LA #25668)
Jason Culotta (LA #35731)
Jacob Pritt (LA #38872)
Jones Walker LLP
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170-5100
Phone: (504) 582-8154
      (504) 582-8177
      (504) 582-8643
Fax:   (504) 589-8154
      (504) 589-8177
      (504) 589-8643
Email: jkogos@joneswalker.com
      jculotta@joneswalker.com
      jpritt@joneswalker.com

**Counsel for Defendant, Sun Belt Conference Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court on this 26th day of September, 2022, to be served on all counsel of record by operation of the Court's electronic filing system and/or by email.

*/s/ Jennifer F. Kogos*
Jennifer F. Kogos
