UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PATRICK HAIRSTON                                    CIVIL ACTION

VERSUS                                                      NO. 21-2088

SUN BELT CONFERENCE INC.                        SECTION: "G"


## ORDER AND REASONS

Before the Court is Defendant Sunbelt Conference, Inc.'s ("Defendant") "Motion for Summary Judgment."[1] Defendant seeks dismissal with prejudice of all of the claims brought by Plaintiff Patrick Hairston ("Plaintiff"). The instant motion was filed on October 4, 2022 and set for submission on October 19, 2022.[2] Under Local Rule 7.5, an opposition to a motion must be filed eight days before the noticed submission date. Plaintiff sought leave to file an untimely opposition to the instant motion on October 19, 2022.[3] The Court granted Plaintiff leave on October 24, 2022.[4] Considering the motion, the memoranda in support, the record, and the applicable law, the Court grants the motion in part as to Plaintiff's request for nonpecuniary damages under article 1998 of the Louisiana Civil Code and punitive damages under his breach of contract claim and request for penalty wages under his LWPA claim. The Court denies the motion in all other respects.

---

[1] Rec. Doc. 60.

[2] *Id.*

[3] Rec. Doc. 71.

[4] Rec. Doc. 82.

1

## I. Background

### A.    *Factual Background*

On October 8, 2021, Plaintiff filed a Complaint against Defendant in the Civil District Court for the Parish of Orleans.[5] On November 11, 2021, Defendant removed the case to this Court, asserting both federal question and diversity jurisdiction.[6] According to the Complaint, Plaintiff is a 50-year-old African American male and was employed by Defendant until he was fired on April 30, 2020.[7] Plaintiff avers that he began his formal employment with Defendant on May 1, 2016.[8] Plaintiff contends that he signed a contract appointing him as the Associate Commissioner for Compliance at Defendant (the "Employment Agreement").[9]

Plaintiff contends that he was told his position was "shut down" due to budget cuts related to Covid-19, but suspects that he was actually fired due to the "culmination of a toxic workplace that discriminated against him because of his race."[10] Plaintiff contends that his position still exists, and Defendant hired a non-minority candidate to fill the position immediately after he was fired.[11]

---

[5] Rec. Doc. 1–1.

[6] Rec. Doc. 1.

[7] Rec. Doc. 1-1 at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

Plaintiff avers that Defendant terminated four other minority employees on or around the same date.[12]

Plaintiff alleges that he received positive performance reviews from former Commissioner Karl Benson ("Benson").[13] Plaintiff avers that at the end of Benson's tenure, Keith Gill ("Gill") was appointed Commissioner, and Kathy Keene ("Keene") remained the Deputy Commissioner.[14] Plaintiff asserts that Keene opposed retaining Plaintiff for his position, and disfavored hiring other minority employees.[15] Instead, Plaintiff avers that Keene recommended hiring white employees.[16] Plaintiff alleges that upon Benson's retirement, Keene terminated the minority employees that Benson hired, and "favored white employees she had previously recommended for hire."[17]

Plaintiff contends that when Gill and Keene took over, there was an "immediate change" in the office, and that one minority employee quit because of the "developing toxic work conditions."[18] Plaintiff avers that Keene would leave him out of meetings that directly related to his job responsibilities.[19] Plaintiff alleges that information that was pertinent to his department was being "passed over him and provided to Keene."[20] Plaintiff further alleges that Keene began taking

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 3.

[20] *Id.*

over Plaintiff's job responsibilities.[21] When Plaintiff confronted Keene about why she was doing this, Keene informed him that Gill was not pleased with his work.[22] However, Plaintiff alleges that Keene did not offer any direction as to how to fix the problem.[23] Additionally, Plaintiff asserts that he was retaliated against when he voiced his concerns and that Keene increasingly scrutinized his work.[24]

Plaintiff alleges that he was terminated over the phone on April 30, 2020.[25] Plaintiff avers that Gill "would not call the termination a termination, he could not specify what work product was unsatisfactory, he would not say what the future of the position would look like, nor did he say he would put the reason for termination in writing."[26] Plaintiff contends that Gill did not have a significant say in Plaintiff's termination, but rather that Gill was used "as a shield" because he was the "lone remaining minority employee at the Sun Belt."[27]

Plaintiff brings claims for breach of contract,[28] race discrimination in violation of the Louisiana Employment Discrimination Law ("LEDL"),[29] and failure to pay vacation time in

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 4.

[28] *Id.*

[29] *Id.* at 5.

violation of the Louisiana Wage Payment Act ("LWPA").[30] Plaintiff requests punitive damages under his breach of contract, LEDL, and LWPA claims.[31]

## B.   *Procedural Background*

On October 8, 2021, Plaintiff filed a Complaint against Defendant in the Civil District Court for the Parish of Orleans.[32] On November 11, 2021, Defendant removed the case to this Court, asserting both federal question and diversity jurisdiction.[33] On November 12, 2021, Defendant filed a partial motion to dismiss Plaintiff's claims under the Louisiana Unfair Trade Practices Act.[34] On November 23, 2021, Plaintiff filed a motion to remand.[35] On December 16, 2021, this Court denied Plaintiff's motion to remand because the complaint raised a federal question by attaching and incorporating an EEOC charge that stated a claim under Title VII.[36] Subsequent to that ruling, Plaintiff amended his Complaint to remove the EEOC charge and his request for punitive damages under Title VII.[37]

On January 28, 2022, Plaintiff filed a second motion to remand, asserting that the case should be remanded because any federal claim was dismissed and the Court does not have diversity

---

[30] *Id.* at 7.

[31] *Id.* at 6.

[32] Rec. Doc. 1–1.

[33] Rec. Doc. 1.

[34] Rec. Doc. 3.

[35] Rec. Doc. 6.

[36] Rec. Doc. 21.

[37] Rec. Doc. 33.

jurisdiction over the state law claims.[38] On February 10, 2022, this Court denied Plaintiff's second motion to remand.[39]

On October 4, 2022, Defendant filed the instant motion for summary judgment.[40] The motion was set for submission on October 19, 2022.[41] Pursuant to Local Rule 7.5, an opposition to a motion must be filed eight days before the noticed submission date.[42] Plaintiff sought leave to file his untimely opposition to Defendant's motion to dismiss on October 21, 2022.[43] On October 24, 2022, this Court granted Plaintiff's motion for leave to file an untimely opposition.[44] On October 28, Defendant filed a reply in further support of the motion.[45]

## II. Parties' Arguments

### A.   *Defendant's Arguments in Support of Summary Judgment*

Defendant raises six arguments in support of its motion for summary judgment.[46] The Court summarizes each in turn.

---

[38] Rec. Doc. 34.

[39] Rec. Doc. 42.

[40] Rec. Doc. 60.

[41] *Id.*

[42] EDLA Local Rule 7.5

[43] Rec. Doc. 71.

[44] Rec. Doc. 82.

[45] Rec. Doc. 90.

[46] Rec. Doc. 60-2.

### 1.    Racial Discrimination Claim Under the LEDL

First, Defendant argues that it is exempt under the LEDL because it employed fewer than twenty employees during the relevant period for Plaintiff's claim.[47] Defendant asserts that the LEDL only applies to "employer[s] who employ[] twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."[48] Defendant points out that federal district courts have applied the Supreme Court's "payroll method" to determine whether an employer is exempt under LEDL.[49] Defendant contends that because it "did not pay compensation to 20 or more employees at any point during the relevant time period, the Court must dismiss" Plaintiff's claim under the LEDL.[50]

Second, Defendant argues in the alternative, that its "decision to not renew Plaintiff's employment contract was made for legitimate, non-discriminatory reasons."[51] Defendant contends that summary judgment is appropriate even if Plaintiff meets his *prima facie* case because "[t]he stated reason for termination, inadequate job performance, is a legitimate non-discriminatory reason for termination."[52] Defendant argues that its reason for termination is not a pretext for race discrimination because the decision to terminate Plaintiff was made solely by a member of the same protected class and "there is no evidence on the record that race played any part in [Gill's]

---

[47] *Id.* at 11.

[48] *Id.*

[49] *Id.* at 12.

[50] *Id.* at 11.

[51] *Id.* at 20–21.

[52] *Id.*

decision."[53] Therefore, Defendant asserts that it is entitled to summary judgment because "Plaintiff cannot establish evidence that [Defendant]'s legitimate, non-discriminatory reason for his termination was merely a pretext for race discrimination."[54]

### 2.     Breach of Contract Claim

Third, Defendant argues that Plaintiff cannot establish a failure to perform, a crucial element for a breach of contract action under Louisiana law.[55] Defendant avers that Plaintiff must show a breach of an express provision of an employment agreement to establish a breach of an employment contract.[56] Defendant alleges that the employment agreement imposes three duties on Defendant: "(1) payment of a minimum annual salary of $96,000. . . ; (2) retirement contributions equal to 10% of Plaintiff's salary through June 30, 2020; and (3) provision of medical and dental coverage through June 30, 2020."[57] Defendant asserts that both its own Chief Financial Officer, Herbert Carter ("Carter") and Plaintiff have testified that Plaintiff was paid his salary and retirement contributions through June 30, 2020.[58] Defendant further asserts that while "Plaintiff argues that he was terminated on or around April 30, two months prior to the end of the contract . . . he was still paid as a [] employee and given full benefits under the Employment Agreement

---

[53] *Id.* at 23–24.

[54] *Id.* at 25.

[55] *Id.* at 14.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 14–15.

until June 30."[59] Therefore, Defendant argues that it "is entitled to summary judgment on the breach of contract claim" because it "did not fail to perform any of its obligations to Plaintiff under the [Employment] Agreement."[60]

Fourth, Defendant argues that Plaintiff cannot establish that he is entitled to any damages for his breach of contract claim.[61] Defendant contends that "it is undisputed that Plaintiff received all benefits due to him under the terms of the Employment Agreement."[62] Defendant avers that Louisiana law bars Plaintiff from recovering nonpecuniary damages for mental anguish, emotional distress, embarrassment, and loss of reputation under an alleged breach of an employment contract.[63] Defendant asserts that Louisiana Civil Code article 1998 restricts recovery of nonpecuniary losses to contracts with an object of "intellectual, moral, or religious enjoyment."[64] Defendant points out that prior jurisprudence indicates that employment contracts "are not those 'intended to gratify a nonpecuniary interest.'"[65] Defendant further argues that punitive damages are not available for breach of contract under Louisiana law.[66] Therefore, Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because "Plaintiff has

---

[59] *Id.*

[60] *Id.* at 15.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 15–16.

[64] *Id.* at 16.

[65] *Id.*

[66] *Id.*

either experienced no damages as a result of any failure to perform, or the damages are not recoverable as a matter of law."[67]

### 3.      Failure to Pay Vacation Time Under the LWPA Claim

Fifth, Defendant argues that summary judgment is warranted on Plaintiff's vacation pay claim because he was paid for all eight of his unused vacation days at the time of termination.[68] Defendant contends that the LWPA requires an employer to promptly disburse a discharged employee for any unused vacation time with any unpaid wages that the employee has accrued as of the date of discharge.[69] Defendant avers that it adopted a "use it or lose it" policy with respect to the accrual of vacation days.[70] Defendant asserts that under the policy, an employee loses rights to any unused vacation days accrued during the prior fiscal year if they fail to exercise it within a one month period after the close of that fiscal year.[71] Defendant avers that Plaintiff's claim seeking payment for three more days of vacation time is invalid because he incorrectly sought to carry over three days of unused vacation days from the 2018–2019 fiscal year to the 2019–2020 fiscal year.[72] Therefore, Defendant argues that summary judgment is proper as to Plaintiff's claim for unpaid vacation time.

---

[67] *Id.* at 16–17.

[68] *Id.* at 17.

[69] *Id.* (citing *Kingsbery v. Paddison*, 2021 U.S. Dist. LEXIS 90514, at *14 (E.D. La. May 12, 2021) ("Vacation pay is considered an 'amount then due' in accordance with the employer's vacation policy [and the LWPA].") (Feldman, J.).

[70] *Id.* at 17–18.

[71] *Id.* at 18.

[72] *See id.* at 18–19.

Sixth, Defendant argues that if there is a dispute as to whether Plaintiff accrued eight or eleven vacation days, that summary judgment is proper as to Plaintiff's claim for penalty wages.[73] Defendant notes that penalties are available under the LWPA "when the employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past due wages."[74] Defendant points out that the LWPA directs courts to decline awarding penalty wages where "an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute."[75] Defendant argues that "there is no question of fact as to whether there was, at the very least, a bona fide dispute between Plaintiff and [Defendant] over unused vacation time."[76]

## B. *Plaintiff's Arguments in Opposition*

Plaintiff advances four arguments in his opposition to Defendant's motion. First, Plaintiff asserts that Defendant is subject to LEDL because it employed "more than 20 employees throughout [Plaintiff]'s tenure."[77] Plaintiff contends that the Fifth Circuit has adopted the "hybrid economic realities/common law control test" to determine whether a person is an employee for purposes of Title VII and LEDL.[78] Plaintiff asserts that under this test, independent contractors

---

[73] *Id.* at 19–20.

[74] *Id.* at 20.

[75] *Id.* at 19–20 (quoting La. R.S. § 23:632); *see also Steak v. Hat World, Inc.*, 191 So. 3d 712, 715–16 (La. App. 4 Cir. 2016) ("If a bona fide dispute exists over the amount of wages due, an employer's failure to pay is not an arbitrary refusal and no penalties will be awarded.").

[76] *Id.* at 20.

[77] Rec. Doc. 83 at 4.

[78] *Id.* at 3–4 (citing *Arbaugh v. Y & H Corp.*, 380 F.3d 219 (5th Cir. 2004)).

may fall into the category of "employee" if the employer exercises broad control over the means and manner of the independent contractor's performance.[79] Plaintiff argues that Defendant contracted with many "Officials Coordinators as well as numerous paid officials to referee various games that are not included on their payroll record."[80] Plaintiff avers these Officials Coordinators are "seven additional employees who receive paychecks from" Defendant in exchange for the work they do on its behalf.[81] Thus, Plaintiff argues that Defendant is subject to LEDL because it employed more than twenty employees during the relevant period.[82]

Second, Plaintiff argues that Defendant breached the Employment Agreement by terminating Plaintiff before the end of his term prescribed in the Agreement.[83] Plaintiff avers that Defendant breached the contract by terminating Plaintiff prior to the end of the guaranteed date of the contract's expiration.[84] Plaintiff contends that Defendant's failure to perform a general obligation under the Employment Agreement merits awards of back pay, loss of future job prospects, and other nonpecuniary damages.[85] Plaintiff points out that Defendant's act of labeling his termination "for cause . . . has done significant damage to [Plaintiff's] future job prospects" in

---

[79] *Id.* at 4.

[80] *Id.* at 5.

[81] *Id.*

[82] *Id.*

[83] *Id.* at 7–8.

[84] *Id.* at 8.

[85] *Id.* at 7–8. Plaintiff specifically requests damages for embarrassment,

his specialized field.[86] Therefore, Plaintiff argues summary judgment is improper as to his breach of contract claim.

Third, Plaintiff argues that Defendant "failed to pay [] vacation days timely and never paid them entirely."[87] Plaintiff asserts that the LWPA requires employers to pay amounts due under the employment agreement "on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."[88] Plaintiff argues that unpaid vacation time is an "amount then due" under LWPA and that Defendant did not disburse payment until June 30, 2020.[89] Plaintiff avers that his email on June 29, 2020 inquiring about the amount of vacation days he was being paid for at termination constitutes a demand under the LWPA.[90] Plaintiff further argues that "[a]t best, his vacation days are the subject of a genuine issue of material fact."[91] Therefore, Plaintiff asserts that Defendant is not entitled to summary judgment on the LWPA claim.[92]

Lastly, Plaintiff avers that he has presented a *prima facie* case of racial discrimination in which Defendant's purported non-discriminatory basis is a mere pretext.[93] Plaintiff points to deposition testimony of Defendant's former minority employees that reveal uses of racially

---

[86] *Id.* at 9–10.

[87] *Id.* at 10.

[88] *Id.* at 10–11 (quoting La. R.S. § 23:631).

[89] *Id.* at 11.

[90] *Id.*

[91] *Id.* at 12.

[92] *Id.* at 13.

[93] *See id.* at 13–14.

charged language and slurs by Carter and other employees in the workplace and Keene's preferential treatment of white employees.[94] Plaintiff avers that Defendant replaced him with a white female within a month after his termination.[95] Plaintiff further argues that even if Defendant is deemed to have rebutted his *prima facie* case of discrimination, there is sufficient circumstantial evidence of discrimination in the record to maintain his LEDL claim.[96]

## C.   *Defendant's Reply Arguments in Further Support of Motion*

In its reply, Defendant argues that Plaintiff presents no evidence to create a fact issue that it employed over twenty employees during 2019 and 2020, the relevant period for Plaintiff's claim.[97] Defendant points out that Plaintiff's citation to its current website[98] is not competent evidence that creates a factual issue as to the number of employees employed during Plaintiff's tenure.[99] Defendant argues that Plaintiff incorrectly relies on the employee-numerosity standard articulated in *Arbaugh v. Y&H Corp.* because it "predate[s] the Fifth Circuit's application of the *Walters* payroll test to the LEDL numerosity requirement."[100] Therefore, Defendant argues that this Court should grant summary judgment because Plaintiff cannot provide any competent

---

[94] *Id.* at 13–17 (citing portions of John McElwain's and Alexandria Price's depositions).

[95] *Id.* at 17.

[96] *Id.* at 18–20; *id.* at 19–20 (citing *Rachid v. Jack in the Box*, 376 F.3d. 305 (5th Cir. 2004)).

[97] Rec. Doc. 90 at 2.

[98] Rec. Doc. 83 at 5–6.

[99] *See* Rec. Doc. 90 at 2–3.

[100] *Id.* at 3.

evidence that creates a dispute of fact as to whether Defendant satisfies the LEDL's employee-numerosity requirement.[101]

Defendant argues in the alternative that Plaintiff has failed to provide evidence of pretext or that race was a motivating factor in Gill's decision to terminate Plaintiff.[102] Defendant avers that former minority employees' deposition testimony is not evidence of racial animus in Plaintiff's termination because the employees either: (a) were not physically present in the workplace after Gill became Commissioner,[103] or (b) predated Plaintiff's tenure or were not physically present in the workplace during his tenure.[104] Defendant asserts that Plaintiff must provide evidence of discriminatory comments which are "temporally proximate to the adverse employment action and made by individuals with authority over the employment decision at issue."[105] Therefore, Defendant asserts that it is entitled to summary judgment on Plaintiff's LEDL claim because Plaintiff has not produced evidence establishing a mere pretext for racial discrimination in his termination.[106]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[101] *Id.* at 3–4.

[102] *Id.* at 4.

[103] *Id.*

[104] *Id.* at 4–5.

[105] *Id.* at 5.

[106] *Id.* at 6–7.

a matter of law."[107] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[108] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[109] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[110] The nonmoving party may not rest upon the pleadings.[111] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[112]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[113] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at

---

[107] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[108] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[109] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[110] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[111] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[112] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[113] *Celotex*, 477 U.S. at 323.

trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[114] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[115] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[116]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[117] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[118] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

Defendant seeks dismissal of all of Plaintiff's claims.[119] The Court evaluates each of Plaintiff's claims in turn.

---

[114] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[115] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[116] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[117] *Little*, 37 F.3d at 1075 (internal citations omitted).

[118] *Morris*, 144 F.3d at 380.

[119] Rec. Doc. 3-1 at 4.

**A.      *Plaintiff's Employment Discrimination Claim Under the LEDL***

**1.      Whether Defendant is Entitled to Summary Judgment Because of the Employee-Numerosity Requirement of the LEDL**

The LEDL "only [applies] to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year."[120] The LEDL defines employer as: "[A] person, association, legal or commercial entity . . . receiving services from an employee and in return, giving compensation to of any kind to an employee."[121] Louisiana courts rely upon Title VII standards when addressing liability for LEDL claims.[122] Louisiana district courts apply the "payroll method" established in the Supreme Court's Title VII jurisprudence to determine the employee-numerosity element of claims brought under the LEDL.[123] The inquiry ends at examining the payroll records for the relevant period only if the employer does not maintain relationships with any independent contractors.[124]

After analyzing the number of employees on the payroll, the Court must determine whether an alleged independent contractor is an employee for the purposes of the employee-numerosity

---

[120] La. Rev. Stat. § 23:302.

[121] *Id.*; *see also Jones v. City of Monroe*, 2019 U.S. Dist. LEXIS 185264, at *16 (W.D. La. Oct. 8, 2019).

[122] *See, e.g.*, *Brittain v. Family Care Servs., Inc.*, 801 So. 2d 457, 461 (La. App. 2d Cir. 2001).

[123] *See, e.g.*, *Jones*, 2019 U.S. Dist. LEXIS 185264, at *16; *Mahl v. Nokia, Inc.*, 212 F. App'x 279, 280 (5th Cir. 2006) (per curiam) (affirming another Court in the Eastern District of Louisiana's finding that the "payroll test" applied to state law claims under the LEDL where defendant employer did not maintain any relationships with independent contractors).

[124] *See Brown v. Canal Energy & Serv., Inc.*, 2011 U.S. Dist. LEXIS 78179, at *8–9 (E.D. La. July 19, 2011) (Lemmon, J.) ("In distinguishing employees from independent contractors, the United States Court of Appeals for the Fifth Circuit applies a hybrid economic realities/common law control test to determine whether a person is an 'employee' for Title VII purposes.").

requirement.[125] The Fifth Circuit adopted the "hybrid economic realities/common law control test" to evaluate whether an individual qualifies as an employee under Title VII.[126] The test weighs the following factors:

> (1) ownership of the equipment necessary to perform the job; (2) responsibility for costs associated with operating that equipment and for license fees and taxes; (3) responsibility for obtaining insurance; (4) responsibility for maintenance and operating supplies; (5) ability to influence profits; (6) length of the job commitment; (7) form of payment; and (8) directions on schedules and on performing work.[127]

Louisiana federal district courts have determined that the most important factor of this test is "the extent of the employer's right to control the 'means and manner' of the worker's performance."[128] Another court in the Eastern District of Louisiana applied this framework in *Brown v. Canal Energy & Servicing, Inc.*[129] In *Brown*, African American men who were denied positions at an oil field servicing company filed suit alleging the company "refused to hire them due to their race in violation of Title VII."[130] Under the payroll test, the company employed no more than ten employees for any given pay period during the relevant year.[131] However, the *Brown* court continued to analyze whether the company's owners and various other independent

---

[125] *See id.*

[126] 380 F.3d 219, 226 (5th Cir. 2004), *rev'd on other grounds*, 546 U.S. 500 (2006).

[127] *Id.*

[128] *Canal Energy & Serv., Inc.*, 2011 U.S. Dist. LEXIS 78179, at *9.

[129] *Id.* at *5–9.

[130] *Id.* at *2.

[131] *Id.* at *3–5.

contractors, who did not appear on the payroll logs, were employees under Title VII.[132] In addressing the purported independent contractors, the court applied the "hybrid economic realities/common law control test" to determine if the persons were employees for Title VII purposes.[133]

Prior jurisprudence demonstrates that the number of employees on the payroll is only the sole factor in determining employee-numerosity where the defendant-employer maintains no employment relationships with independent contractors.[134] Here, Plaintiff has identified some evidence creating a fact dispute on employee-numerosity beyond his own testimony.[135] Plaintiff points out that Defendant maintains an online staff directory that names seven other individuals as

---

[132] *Id.* at *9–11.

[133] *Id.*

[134] *See, e.g.*, *Imbornone*, 2013 U.S. Dist. LEXIS 102017 at *2, *4–5; *Canal Energy & Serv., Inc.*, 2011 U.S. Dist. LEXIS 78179 at *9–10.

[135] Plaintiff's reference to Defendant's staff directory page on its website is some evidence that Defendant may satisfy the employee numerosity requirement of the LEDL. The directory lists more than twenty individuals and provides more evidence of a factual dispute on the employee numerosity requirement beyond the mere assertions of the plaintiffs in prior cases which failed to present any evidence other than by way of self-serving testimony. *See Mahl v. Nokia, Inc.*, 212 F. App'x 279, 280 (5th Cir. 2006) (per curiam) (holding that plaintiff's claim could not withstand summary judgment because plaintiff presented no evidence other than her assertions in an affidavit that "to her knowledge" Defendant employed "numerous people.").

Officials Coordinators and that Defendant published press releases on two of their Officials Coordinators during the period which Plaintiff worked for Defendant.[136]

The relevant years to examine payroll records are 2019 and 2020 because Plaintiff's employment was terminated in 2020.[137] Defendant points out that it maintained no more than sixteen active employees on its payroll logs for any pay period within that time span.[138] Defendant correctly contends that there is no pay period within the relevant year in which Defendant had more than twenty employees on the payroll.

However, Plaintiff avers that Defendant also employed seven Officials Coordinators as independent contractors. Plaintiff's cites competent evidence on the Officials Coordinators duties and services for Defendant, creating a genuine dispute of fact as to whether LEDL's employee-numerosity requirement is satisfied.[139] Plaintiff contends that Officials Coordinators "act as agents of" Defendant in identifying, hiring, and managing officiating crews for every sport which Defendant administers.[140] Plaintiff points out that Defendant "maintains the ability to suspend" the officiating crews for poor performance and failure to follow Defendant's rules.[141] Plaintiff

---

[136] *See, e.g., McDaid Named Sun Belt, SEC Coordinator of Football Officials,* https://sunbeltsports.org/news/2020/2/3/mcdaid-named-sun-belt-sec-coordinator-of-football-officials.aspx (Feb. 3, 2020 1:25 PM).

[137] *Id.* at 4–5; Rec. Doc. 60-1 at 1–2.

[138] Rec. Doc. 60-2; *see generally* Rec. Doc. 60-3 (Defendant's payroll registers).

[139] Rec. Doc. 83 at 5–7.

[140] *Id.* at 6.

[141] *Id.*

contends that this is competent evidence to create a fact dispute that the Officials Coordinators are employees under the LEDL.

Notably, on summary judgment, Plaintiff need not conclusively prove that Defendant employed more than twenty employees during the relevant period. Plaintiff cites to Defendant's online publications during the relevant period when the alleged discrimination occurred,[142] along with its online directory to present at least some evidence in support of a finding that its Officials Coordinators are employees under the LEDL.[143] Therefore, this Court finds that a genuine dispute of material fact exists as to whether the employee-numerosity requirement under the LEDL is met in this case and determines that summary judgment is not appropriate as to Plaintiff's LEDL claim on the grounds of the employee-numerosity requirement.

### 2.    Whether the Defendant is Entitled to Summary Judgment on Plaintiff's LEDL Claim

Defendant alternatively argues that it is entitled to summary judgment on Plaintiff's LEDL claim because "Plaintiff cannot establish that the legitimate, non-discriminatory reason [Defendant] declined to renew his employment contract is a mere pretext."[144] Defendant asserts

---

[142] *Id.* at 5–7 & nn.8–12 (citing Defendant's staff directory, former press releases, and news stories detailing Defendant's relationship with officials coordinators and the referees the Coordinators identify and hire).

[143] *Id.*

[144] Rec. Doc. 60-2 at 22.

that Plaintiff has submitted no evidence that any discriminatory behavior was temporally proximate to and related to [Defendant's] decision to terminate his employment."[145]

Because LEDL and Title VII "share the same scope, claims under the LEDL are analyzed under the Title VII framework and jurisprudence."[146] Thus, absent direct evidence of discrimination, a plaintiff must first demonstrate that "(1) he was in a protected class; (2) he was qualified for the position; (3) he suffered adverse employment action; and (4) he was replaced by someone outside of the protected class or treated less favorably than similarly situated employees" in order to survive summary judgment.[147] The burden then shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the termination. Following this, the burden shifts back to the plaintiff to demonstrate that the non-discriminatory reason for their termination "was merely a pretext for race discrimination."[148]

Presuming, just as Defendant's motion does,[149] that Plaintiff has satisfied his *prima facie* case for racial discrimination, this Court finds that Defendant has pointed to a legitimate, non-discriminatory rationale to support his termination. It is well established that poor job performance is a legitimate, non-discriminatory reason and that a defendant need only produce some evidence of poor performance to satisfy its burden of production.[150] Next, Plaintiff must point to some

---

[145] *Id.*

[146] *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

[147] *Brown v. Home Depot U.S.A., Inc.*, 2015 U.S. Dist. LEXIS 56874 at *20–21 (E.D. La. Apr. 30, 2015) (Brown, J.).

[148] *Id.* at 35.

[149] Rec. Doc. 60-2 at 22.

[150] *See, e.g.*, *Singleton v. YMCA of Greater Hous.*, 788 F. App'x 292 (5th Cir. 2019) (holding that poor job

evidence in the record which demonstrates that a genuine issue of material fact exists as to whether Defendant's stated reason for terminating Plaintiff is a mere pretext. The Fifth Circuit has held that a plaintiff may survive summary judgment on its racial discrimination claim if it can alternatively prove "'mixed motives,' . . . [by] show[ing] that his race was merely a motivating factor in his employer's decision" to terminate.[151]

In *Patel v. Midland Memorial Hospital*, an Indian doctor sued a hospital for suspending his clinical privileges, alleging the hospital's suspension of his privileges constituted racial discrimination.[152] The doctor presented evidence of statements from doctors and other staff using racially charged language and slurs to refer to him to prove that the hospital's justification for his suspension was a mere pretext.[153] Notably, none of the alleged statements were made by members of the two committees of physicians that recommended and authorized the doctor's suspension.[154] The Fifth Circuit determined that the doctor failed to create a factual issue because he did not show that the derogatory statement made by other employees were more than "stray remarks."[155] Therefore, the Fifth Circuit affirmed the district court's grant of summary judgment because the

---

performance can be a legitimate, non-discriminatory reason for termination).

[151] *See, e.g.*, *Mackey v. Enventives, LLC*, 802 F. App'x 835, 838 (5th Cir. 2020); *Chapple v. Tex. Health & Human Servs. Comm'n*, 789 F. App'x 985 988 n.3 (5th Cir. 2019) (per curiam). "Once an employer produces a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to make one of two showings . . . either (1) the employer's proferred reason for the adverse action is not true but is instead pretext for discrimination (pretext inquiry) or (2) the reason, while true is only one reason for the adverse action, another being that racial discrimination was a motivating factor (mixed motives inquiry). If the plaintiff succeeds on either ground, he will survive a motion for summary judgment." *Mackey*, 802 F. App'x at 837.

[152] 298 F.3d 333, 335 (5th Cir. 2002).

[153] *Id.* at 343–45.

[154] *See id.*

[155] *Id.*

racial slurs and derogatory sentiment present in the workplace were not temporally linked with the decision to terminate the doctor.[156]

     Unlike the stray remarks in *Patel*, Plaintiff has introduced sufficient evidence to create a fact issue regarding the reason for his termination because there is a nexus between those who allegedly harbor racial animus and participate in the decision-making process leading up to Plaintiff's termination. Here, Plaintiff points to the deposition testimony of John McElwain ("McElwain") and an affidavit of Alexandria Price ("Price"), two former employees at Defendant.[157]   Plaintiff asserts that McElwain's testimony provides some evidence of racial animus which affected Gill's decision to terminate Plaintiff.[158] McElwain stated that Carter commonly used racial slurs towards African Americans over a substantial period and that Keene "treated white employees differently than black employees."[159] McElwain further testified that Defendant's employees openly exhibited racial animus towards members of other ethnic and racial groups.[160] Price's affidavit "details a toxic workplace environment for an African American female."[161] Plaintiff also points out that Keene admitted that Carter told her that Gill was appointed Commissioner over Keene due to "that black shit" impacting the selection process.[162] Keene also

---

[156] *Id.*

[157] *See generally* Rec. Doc. 83 at 13–17.

[158] *Id.* at 14–15.

[159] *Id.*

[160] *Id.* at 15–16.

[161] *Id.* at 16.

[162] Rec. Doc. 83-10 at 112 ("Q: Did [Carter] refer to Mark Becker's hiring of [] Gill as, quote, that black shit? A: That was said to me, yes.").

testified to serving as Plaintiff's supervisor and even signed his 2018–2019 annual performance review along with Carter.[163]

This Court finds that Plaintiff has presented circumstantial evidence of racial discrimination in the decision to terminate his employment. Between the sworn statements of two former employees as to Carter and Keene's disposition towards minority employees and the evidence demonstrating that Carter and Keene served a supervisory role, Plaintiff has presented some evidence upon which a reasonable factfinder could rely to find that racial animus may have impacted the decision to terminate Plaintiff and that the racial animus was temporally proximate to his termination. Therefore, Defendant is not entitled to summary judgment on Plaintiff's LEDL claim for racial discrimination.

## B.    *Plaintiff's Breach of Contract Claim*

### 1.    Whether Defendant is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim on the Issue of Failure to Perform

Plaintiff contends that Defendant terminated him in breach of the Employment Agreement because he was terminated months before his guaranteed one-year period elapsed.[164] Defendant argues that Plaintiff was not terminated until June 30, 2020 because Plaintiff was paid his salary and benefits under the Employment Agreement until that date.[165] Under Louisiana law, a plaintiff bringing a breach of contract claim must prove three essential elements: "(1) the obligor's

---

[163] *Id.* at 97–99; 103–12 (describing involvement in senior leadership meetings with Gill and Carter to make management decisions in Spring 2020); Rec. Doc. 83-13 at 5.

[164]  Rec. Doc. 83 at 7.

[165] Rec. Doc. 60-2 at 13–15.

undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[166]

Defendant contends that Plaintiff cannot present any evidence to prove that a dispute of fact exists as to the first and third elements of his breach of contract claim.[167] Defendant argues that Plaintiff and Defendant's CEO "have testified that Plaintiff was paid his salary through June 30, 2020" and was "merely relieved of any duties on behalf of [Defendant]."[168] Plaintiff points out that Gill and Carter admitted in depositions that Plaintiff was not allowed to access the office after April 30, 2020, and that Defendant made public communications to member institutions that Plaintiff was no longer an employee prior to June 30, 2020.[169] Plaintiff further points out that Gill conceded in his deposition that Plaintiff was not employed through the end date of his contract.[170]

The Court finds that Plaintiff has pointed to non-self-serving evidence in the record on the issue of whether Plaintiff was fired on April 30, 2020 in breach of the employment agreement. Therefore, summary judgment is not appropriate as to Plaintiff's breach of contract claim because

---

[166] *Favrot v. Favrot*, 2010-986 (La. App. 4 Cir. 2/9/11); 68 So. 3d 1099, 1108–09'; *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018).

[167] Rec. Doc. 60-2 at 14–16; Rec. Doc. 90 at 7–8.

[168] Rec. Doc. 60-2 at 14–15.

[169] Rec. Doc. 83 at 8–9; Rec. Doc. 83-2 at 69–72.

[170] Rec. Doc. 83 at 9.

a genuine dispute of material fact exists as to whether Defendant breached the Employment Agreement by terminating Plaintiff before the end of his term.

### 2.     Whether Defendant is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim on the Issue of Damages

Defendant further avers that Plaintiff "cannot establish a *prima facie* element of his claim" because he "was not damaged in this case."[171] Defendant asserts that the summary judgment record demonstrates that "Plaintiff did not lose any wages or benefits due to him under the terms of the Employment Agreement."[172] Plaintiff claims that he is entitled to nonpecuniary damages, damages for bad faith breach, and punitive damages. Each of these categories of damages is discussed in turn.

#### a.     *Nonpecuniary Damages Pursuant to La. Civ. Code art. 1998*

Louisiana Civil Code article 1998 provides that a plaintiff may recover nonpecuniary losses "when the contract, because of its nature, is intended to gratify a nonpecuniary interest *and* . . . the obligor knew, or should have known, that his failure to perform would cause that kind of loss . . . [or where] the obligor intended, through his failure, to aggrieve the feelings of the obligee."[173] This remedy is rarely granted in the context of commercial transactions or contracts for services.[174] Comment (c) of article 1998 further elaborates that "[a] contract made for the gratification of a nonpecuniary interest means one intended to satisfy an interest of a spiritual order, such as a

---

[171] Rec. Doc. 60-1 at 17.

[172] *Id.*

[173] La. Civ. Code art. 1998.

[174] *See, e.g.*, *Emergency Physicians Ass'n v. Leventhal*, 2005-1063 (La. App. 1 Cir. 3/24/06); 934 So. 2d 80, 83.

contract to create a work of art, or a contract to conduct scientific research, or a contract involving matters of sentimental value."[175]

In *Emergency Physicians Association v. Leventhal*, the Louisiana First Circuit Court of Appeal denied an award of nonpecuniary damages to plaintiffs on a breach of contract claim.[176] In *Leventhal*, the court addressed a multi-year contract between an emergency room medical practice group and the hospital in which the group operated.[177] After a trial on damages, the trial court dismissed the lawsuit and determined that the medical practice group "was entitled to neither pecuniary nor nonpecuniary damages."[178] On appeal, the court affirmed the trial court's decision finding that the nonpecuniary damages did not apply to a commercial contract for services.[179]

This litigation is analogous to *Leventhal* because the Employment Agreement is "a business contract" for which nonpecuniary damages are not warranted because the contract was "clearly not meant to gratify some intellectual enjoyment."[180] The Employment Agreement at issue here is not meant to gratify some intellectual enjoyment or govern some moral or spiritual matter as required by article 1998, as it is an employment contract.[181] Therefore, Plaintiff cannot maintain his request for nonpecuniary damages pursuant to the breach of contract action unless he provides

---

[175]  La. Civ. Code art. 1998 cmt. c.

[176]  *Leventhal*, 934 So. 2d at 83.

[177]  *Id.* at 80–82.

[178]  *Id.* at 83.

[179]  Notably, the opinion was based on former Louisiana Civil Code article 1934, which was revised and adopted into article 1998 shortly before the trial. *See id.* The *Leventhal* court applied article 1934 because it governed the recovery of nonpecuniary damages at the time of the breach of contract. *Id.*

[180]  *Id.*

[181]  *See id.*

some evidence that Defendant as "obligor intended, through [its] failure, to aggrieve the feelings of" Plaintiff.[182]

To further define this standard, another court in the Eastern District of Louisiana stated that a plaintiff "must show that the breach was '*calculated* to inflict grief, vexation, or inconvenience on the other party.'"[183] Louisiana courts have held that merely pleading that the obligor's breach was in bad faith does not exempt the plaintiff of demonstrating this requirement.[184] Plaintiff cites no legal authority nor any evidence in the record to demonstrate that Defendant's alleged breach was calculated to "inflict grief, vexation, or inconvenience" upon him in his termination. Plaintiff avers that "former Commissioner Karl Benson will testify about [Plaintiff's] chances of obtaining another job in compliance at [another athletic] conference after this termination, which is effectively no chance at all."[185]

The Court cannot accept these assertions as evidence that demonstrates a factual dispute as to whether Defendant intended to "inflict grief, vexation, or inconvenience" upon Plaintiff in its alleged nonperformance of the Employment Agreement. Specifically, the Court notes that the nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by

---

[182] *See* La. Civ. Code art. 1998.

[183] *Pinero v. Jackson Hewitt Serv. Inc.*, 594 F. Supp. 2d 710, 717 (E.D. La. 2012) (Vance, J.) (quoting 6 Saul Litvinoff, La. Civ. L. Treatise §6.16 (2d ed.)).

[184] *See Nolan v. Commonwealth Nat'l Life Ins. Co.*, 28,777 (La.App. 2 Cir. 11/1/96); 688 So. 2d 581, 585; *Jarrell v. Miller*, 38,360 (La. App. 2 Cir. 9/9/04); 882 So. 2d 639; *Deemer v. Deutsche Bank Nat'l Tr. Co.*, 2018 U.S. Dist. LEXIS 30010 at *47–49 (E.D. La. Feb. 23, 2018) (Brown, J.) (ordering plaintiff to amend their complaint as to their claim for nonpecuniary damages to plead more facts regarding the defendant's "intent to aggrieve" because the complaint's bare assertion of bad faith was insufficient).

[185] Rec. Doc. 83 at 10.

"unsubstantiated assertions," or "by only a scintilla of evidence."[186] Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiff's request for nonpecuniary damages under article 1998 of the Louisiana Civil Code because Plaintiff cannot satisfy the standards set forth in the Code.

>    b.    *Bad Faith Obligor Damages Pursuant to article 1997*

Defendant asserts that summary judgment is proper as to Plaintiff's claim for lost wages and lost future profits damages because Plaintiff "received all compensation and benefits he was due under his employment contract."[187] Plaintiff concedes that he was paid all salary due under the Employment Contract, however, Plaintiff raises that he is entitled to damages for lost future profits and nonpecuniary damages due to Defendant's bad faith breach.[188]

The Louisiana Supreme Court recently held in *Lamar Contractors, Inc. v. Kacco, Inc.* that courts do not "examine a party's good faith or bad faith unless and until [it] finds that the party has failed to perform an obligation, from which the obligee has sustained damages."[189]

Here, a genuine fact dispute exists as to whether Defendant failed to perform their contractual obligation.[190] As such, Defendant is not entitled to summary judgment on the issue of Plaintiff's damages resulting from Defendant's alleged breach of the Employment Agreement in bad faith. Therefore, this Court finds that summary judgment is improper because there is a factual

---

[186] *Little*, 37 F.3d at 1075 (internal citations omitted).

[187] Rec. Doc. 60 at 1–2.

[188] Rec. Doc. 83 at 10.

[189] *Lamar Contrs., Inc. v. Kacco, Inc.*, 2015-1430 (La. 5/3/16); 189 So. 3d 394, 398 (quoting *Favrott*, 68 So. 3d at 1109).

[190] *See* discussion *supra* subpart VI.II.a.

dispute as to whether the "obligee [may] prove[] a failure to perform an obligation"[191] under the Employment Agreement in bad faith.

### c.   Punitive Damages for Breach of Contract

Defendant points out that "[u]nder Louisiana law, there can be no punitive damages for breach of contract, even when a party has acted in bad faith in breaching the agreement."[192] The Louisiana Supreme Court has maintained that "punitive or other 'penalty' damages are not allowable unless expressly authorized by statute."[193] Therefore, this Court finds that Defendant is entitled to summary judgment on Plaintiff's punitive damages claim because it is not an appropriate remedy for breach of contract under Louisiana law.

## C.   Plaintiff's Failure to Pay Vacation Time Claim Under the LWCA

Defendant raises two arguments with respect to Plaintiff's unused vacation time claim under the LWCA.

### 1.   Whether a Genuine Dispute of Material Fact Exists as to the Number of Vacation Days at Plaintiff's Termination

Defendant argues that it paid Plaintiff all his unused vacation time in a timely manner.[194] Defendant points out that the Employment Agreement "provides that unused leave time may only be carried forward through July 31st of the subsequent fiscal year."[195] The LWPA requires

---

[191] *Favrot*, 68 So. 3d at 1109.

[192] Rec. Doc. 60-1 at 16 (quoting *Taylor v. Clarke Power Servs.*, No. 16-15890, U.S. Dist. LEXIS 167612, at *19 (E.D. La. Oct. 11, 2017)).

[193] *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988).

[194] Rec. Doc. 90 at 9.

[195] Rec. Doc. 60-1 at 3.

employers to "pay the amount then due [to a departing employee] under terms of employment . . . on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first."[196] The statute provides that unpaid vacation time an employee has accrued as of the date of discharge is considered an "amount then due" under the statute.[197]

Defendant asserts that on July 1, 2019, Plaintiff accrued 15 days of vacation time.[198] Defendant contends that 4.5 of those days carried over from the 2018–2019 fiscal year, and therefore Plaintiff waived his right to exercise them after July 2019. Plaintiff points out that Donna O'Brien ("O'Brien"), an Executive Assistant at Defendant during 2019, sent him an email ledger of his vacation time as of July 23, 2019.[199] Plaintiff argues that the email states that Carter and Keene had agreed to modify the amount of vacation days he was awarded and handwritten markups to the printed email indicate that Plaintiff retained 11 unpaid vacation days.[200]

Plaintiff avers that O'Brien "will testify that the reduction of vacation time after the fiscal year was not a policy that [Defendant] actually followed."[201] Plaintiff points to admissible evidence indicating that Carter and Keene agreed to modify the amount of vacation days he would receive compensation for and that Defendant's "use it or lose it" policy on vacation time is not

---

[196] La. Rev. Stat. § 23:631.

[197] *Id.*

[198] Rec. Doc. 60-1 at 4.

[199] Rec. Docs. 83-5 & 83-6.

[200] *See* Rec. Doc. 83-5.

[201] Rec. Doc. 83 at 12.

stringently followed.[202] Plaintiff further points out that the spreadsheet he received from O'Brien "does not even contain the same columns as the spreadsheet" which Carter contends displays the proper unpaid vacation days totaled at eight days.[203]

Carter testified in a deposition that he sent a follow-up email to Plaintiff with "the correct number with the calculations so he could verify" because O'Brien "gave him a number and that number was incorrect."[204]

Based upon the evidence in the record, the Court finds that a genuine dispute of material fact exists as to the amount of vacation days Plaintiff accrued and carried into the 2019–2020 fiscal year. Plaintiff has pointed to conflicting evidence in the record. Therefore, Defendant is not entitled to summary judgment on Plaintiff's LWPA claim on this basis.

### 2.   Whether Plaintiff is Entitled to Penalty Wages Pursuant to the LWPA

Pursuant to the LWPA, a court may award penalty wages if a plaintiff proves that "(1) wages were due and owing, (2) demand for payment was made at the place where the employee was usually paid, and (3) the employer failed to pay upon demand."[205] Prior jurisprudence demonstrates that the statute does not require written demand and a "fairly precise and certain" oral request for payment is sufficient.[206] The penalty damages provision of the LWPA "is a penal

---

[202] *Id.*

[203] *Compare* Rec. Doc. 83-5, *with* Rec. Doc. 60-3 at 3.

[204] Rec. Doc. 60-4 at 3.

[205] *Steak v. Hat World, Inc.*, 2015-1108 (La. App. 4 Cir. 5/4/16); 191 So. 3d 712, 715.

[206] *Lambert v. Usry & Weeks*, 94-216 (La. App. 5 Cir. 9/14/94); 643 So. 2d 1280, 1281.

statute and therefore must be strictly construed."[207] However, equitable defenses are available and penalty wages will not be imposed if their elements are satisfied.

"When there is a good-faith question of whether or not the employer actually owes past due wages or whether there may be an offset to wages owed, resistance to payment will not trigger penalty wages."[208] However, when the employer is arbitrary or sets out procedural pitfalls for the employee or is merely negligent in failing to pay past due wages, penalty wages will be accessed."[209]

In *Berteau v. Wiener Corp.*, the Louisiana Fourth Circuit Court of Appeal held that penalty wages are subject to an equitable defense of good faith dispute where the employer reasonably disputes the accounting of vacation pay owed to an ex-employee.[210] In *Berteau*, the employee's company handbook provided vacation time pay and provided "that such a request [for vacation pay] will be granted for any reasonable cause provided the leave of absence will not seriously disrupt business operations."[211] The employee took a vacation in spite of the employer's denial of her vacation time and filed suit arguing that the LWPA compelled penalty wages for the nonpayment of her requested time.[212] The court found that the employer was entitled to an

---

[207] *Pace v. Parker Drilling Co. & Subsidiaries*, 382 So. 2d 988, 990–91 (La. App. 1 Cir. 1980).

[208] *Id.* at 991.

[209] *Kern*, 754 So. 2d at 983.

[210] 362 So. 2d 806, 809 (La. App. 4 Cir. 1978).

[211] *Id.* at 807–08.

[212] *Id.* at 809.

equitable defense because there was no evidence of bad faith or "arbitrary or unreasonable" acts from the employer in the refusal to pay.[213]

Here, just as in *Berteau*, the dispute over unpaid vacation pay is based upon principles of practice established in Defendant's employee handbook and the provisions of the Employment Agreement. Defendant asserts that "looking to the forfeiture provisions of the Employment Agreement" and Defendant's paid vacation time policy, Defendant "had a good faith . . . basis to calculate Plaintiff's unused vacation time as eight days, rather than [eleven] days."[214]

It is undisputed that Plaintiff received an amount of $3,042.56 on June 30, 2020 for eight unused vacation days.[215] It is also undisputed that Plaintiff sent an email to Carter on June 29, 2020, the day before he was terminated from Defendant's payroll system, asking how much would he be paid for his unused vacation days.[216] Plaintiff noted in his email that his records indicated he had eleven unused vacation days.[217] The Court finds that this email is sufficient enough to constitute a demand under the LWPA because it was "fairly precise and certain" that Plaintiff wished to apprise Carter to submit all compensation due to him in the immediately foregoing pay period.

Plaintiff has not pointed to anything in the record to demonstrate a fact issue that the accounting dispute between Carter and Plaintiff rises to the category of violations of LWPA like

---

[213] *Id.*

[214] Rec. Doc. 60-2 at 20.

[215] Rec. Doc. 60-1 at 5.

[216] Rec. Doc. 60-3 at 344.

[217] *Id.*

arbitrary refusals or negligent failures to remit benefits due. This Court finds that Plaintiff's factual assertions alone do not raise a genuine factual dispute as to whether Defendant's accounting of Plaintiff's unused vacation time is not a "bona fide dispute [] over the amount of wages due."[218] Furthermore, an accounting dispute as to how much in benefits is due to a terminated employee does not align with the category of arbitrary refusals or negligent failures to pay past due wages.[219] Therefore, Defendant is entitled to summary judgment on Plaintiff's request for penalty wages under the LWPA.

## V. Conclusion

For the reasons discussed above, the Court grants the motion in part as to Plaintiff's request for nonpecuniary damages under article 1998 of the Louisiana Civil Code and punitive damages under his breach of contract claim and request for penalty wages under his LWPA claim. However, there are fact issues in dispute precluding summary judgment on the other pending claims. Accordingly,

---

[218] *See Kaplon v. Rimkus Consulting Group, Inc.*, 39 So. 3d 725, 733 (La. App. 4 Cir. 1998).

[219] *See id.* at 731–33.

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment"[220] is **GRANTED IN PART** as to Plaintiff's request for nonpecuniary damages under article 1998 of the Louisiana Civil Code and request for punitive damages under his breach of contract claim and request for penalty wages under his LWPA claim. The Court **DENIES** the motion in all other respects.

**NEW ORLEANS, LOUISIANA,** this __10th__ day of November, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[220] Rec. Doc. 60.